UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ANTARES REINSURANCE COMPANY LIMITED,**

   Plaintiff,

v.                                                                 No. 4:23-cv-00928-P

**NATIONAL TRANSPORTATION ASSOCIATES, INC., ET AL.,**

   Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss. ECF Nos. 77, 78. Having considered the Motions, briefs, and applicable law, the Court concludes the Motions should be and hereby are **GRANTED**.

## BACKGROUND

Plaintiff Antares Reinsurance Company insures insurers. This case arises from its coverage of non-party United Specialty Insurance Company ("USIC"). Defendant National Transportation Associates ("NTA") sells USIC's policies. Defendant Superior Risk Management ("SRM") provides claims administration/adjusting services for NTA. In 2017, NTA contracted with USIC to sell USIC's policies on commission. This case arises from that contractual relationship,[1] which establishes venue in Tarrant County. The contractual relationship is straightforward, containing the usual housekeeping provisions expected when a general agent sells insurance policies with risk aggregated

---

[1] The contractual relationship is structured by several subcontracts: (1) the General Agency Agreement ("GAA"), (2) the Quota Share Agreement, and (3) the Interests and Liabilities Contracts. The GAA structures NTA's relationship as USIC's general agent. The Quota Share Agreement outlines how NTA gets paid and implements certain record-keeping requirements. The Interests and Liabilities Contracts bind USIC, NTA, and Antares to the first two contracts. The Court collectively calls these "the contract" but signposts where individual subcontracts are relevant.

between multiple layers of insurers. This case mostly involves provisions related to the books and records NTA maintains to document its entitlement to provisional commissions, which are adjusted based on portfolio performance and losses incurred.

The Parties' road to court wound through a series of allegedly unmet demands to inspect Defendants' books and records. It all started with a letter Antares' counsel sent to NTA president Yogesh Kumar on May 13, 2020. The letter told Kumar that Antares would be seeking a formal audit of NTA's files and requested access to the relevant books and records as soon as possible. Antares followed up on June 2, 2020, requesting both an in-person and an electronic audit of policy transactions Defendants had orchestrated under the GAA. Defendants responded that they would allow an audit on 30 days' notice under certain conditions: (1) Antares' counsel would not be involved with the audit itself and (2) the audit would be conducted at NTA's offices in Pleasanton, California. Antares says Defendants imposed these conditions to conceal a fraudulent scheme in which they manipulated their losses to avoid a reduction in NTA's commissions. Antares further alleges that Defendants cooked the books by creating fictitious insurance profiles for non-existent customers to inflate their portfolio and cover their tracks.

Antares sued Defendants in the Northern District of California in January 2023; the case was transferred here in September to comply with forum-selection provisions in the GAA and Quota Share Agreement. Antares' Complaint alleges six causes of action: (1) a request for specific performance of contractual provisions entitling Antares to inspect Defendants' books and records, (2) breach of contract related to NTA's failure to reimburse Antares for provisional commissions NTA should not have received, (3) a demand for accounting against NTA, (4) fraudulent misrepresentation related to Defendants' pretermission of details regarding losses incurred, (5) fraud related to Defendants' alleged fabrication of certain claim documents, and (6) a request for declaratory relief articulating Antares' relevant contractual rights. Defendants now move to dismiss Antares' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). When a claim is moot, the former is absent, and a defendant may move to dismiss under Rule 12(b)(1). *Am. Precision Ammunition, LLC. v. City of Mineral Wells*, 90 F.4th 820, 824 (5th Cir. 2024); *see* FED. R. CIV. P. 12(b)(1). "When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court first considers its jurisdiction." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023).

When evaluating subject-matter jurisdiction, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In doing so, the Court "accept[s] all well-pleaded factual allegations in the complaint as true and view[s] them in the light most favorable to the plaintiff." *Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023). Still, "the burden of proof [is] on the party asserting jurisdiction." *McLin*, 79 F.4th at 415 (citing *Ramming*, 281 F.3d at 161).

Even where jurisdiction is established, a complaint must state a plausible claim to relief. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint's factual allegations suffice if they allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If they don't, dismissal is proper under Rule 12(b)(6). *See* FED. R. CIV. P. 12(b)(6). At the pleadings stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154–55 (5th Cir. 2010). Ordinarily, the pleadings must contain a "short and plain statement" that shows "the pleader is entitled to relief." FED.

3

R. CIV. P. 8(a)(2). But when pleading fraud, plaintiffs must state their claim "with particularity." FED. R. CIV. P. 9(b).

## ANALYSIS

As noted above, Antares' Complaint alleges six causes of action. *See* ECF No. 71 at 22–27. Defendants' jurisdictional challenge concerns count one, which requests inspection of relevant books and records. *See, e.g.*, ECF Nos. 77 at 11; 79 at 12. Their remaining challenges concern Antares' fraud-related causes of action (counts four and five) and request for declaratory judgment (count six). *See* ECF Nos. 77 at 13–17; 79 at 19–26. The Court evaluates their jurisdictional challenge first. *See McLin*, 79 F.4th at 415.

### A. Antares' claim for specific performance is moot.

Antares alleges a contractual right to inspect and copy Defendants' books and records related to USIC insurance policies. *See* ECF No. 71 at 28. Antares' claim implicates four provisions from the GAA and one from the Quota Share Agreement. *See id.* at 23 (noting Antares seeks specific performance under "Sections 5.02, 5.05, 5.06, and 5.08 of the [GAA] and Section 5.04 of the Quota Share Agreement"). To assess the propriety of such equitable relief, the Court must satisfy that those provisions inure to Antares' benefit. Within the GAA, only Section 5.02 creates a legal entitlement for Antares. *See generally* ECF No. 77-2. Sections 5.05, 5.06, and 5.08 concern NTA's obligations if "the Company" seeks inspection of books and records. *See id.* at 7–8. But the GAA defines Antares as "the Reinsurer," not as "the Company." *See id.* at 1. Thus, Antares' claim under the GAA lives or dies with Section 5.02, which reads as follows:

> 5.02 All books, records, accounts, documents and correspondence of the General Agent and any producing agent pertaining to the Company's and Reinsurer's business shall, at all times, be open to examination by any authorized representative of the Company or Reinsurer. The General Agent shall make copies of records available upon request by the Company or Reinsurer, whether such request is before or after termination of this Agreement or the Reinsurance Agreement. The General Agent must maintain separate records of business, including, but not limited to, underwriting files for each insurer for whom it acts as a general agent. Such records must be maintained for five (5) years or until the completion of a financial examination by the insurance department of the state in which the Company is domiciled, whichever is longer.

*Id.* at 6. For its part, the Quota Share Agreement adds no additional requirements but reiterates Antares' right to inspect Defendants' books and records. *See* ECF No. 77-1 at 8–9. Having established the controlling provisions, the Court now asks if Antares raises a non-moot claim for specific performance.

The Complaint details "NTA and SRM's repeated refusal to permit inspection" of relevant books and records. ECF No. 71 at 14 (cleaned up). But with few exceptions, the Court must maintain subject matter jurisdiction "not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)). Thus, the Court must ask if Defendants' subsequent actions rendered a once-viable claim moot. *See id.* While Defendants contest Antares' right to inspect their books and records at all, *see, e.g.*, ECF No. 79 at 17, they contend Antares' claim for specific performance is moot because they have already complied with the above provisions. *See* ECF Nos. 79 at 14–15; 77 at 11–12.

Ordinarily, a claim is mooted when a defendant "accords all the relief demanded by the plaintiff." *Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006) (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3533.7); *see also Alpha K9 Servs. v. Johnson*, 171 F. Supp. 3d 568, 580 (S.D. Tex. 2016) (Hanen, J.). Thus, nothing remains for judicial determination if Defendants have already complied with the applicable provisions: Section 5.02 of the GAA and Section 5.04 of the Quota Share Agreement. *See Already, LLC*, 568 U.S. at 91. While Defendants have produced certain relevant documents, Antares notes that they have not provided full books and records as required under the above provisions. *See* ECF No. 85 at 6. And even the records they have provided are incomplete. Indeed, Antares says Defendants only granted access to "<u>six</u> claim files of the 2,796 claim files [Antares] specifically identified and requested *over six months ago*." *Id.* at 7. As Antares sees things, such limited production only "partially moot[s]" the claim at issue, if at all. *Id.* But the Court can look beyond pleadings to satisfy its jurisdictional inquiry. *See Ramming*, 281 F.3d at 161. Doing so here, the record shows Antares' briefing does not convey the whole picture.

At this stage, Antares' burden "is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). This is typically satisfied where the complaint contains "clear, distinct, and precise affirmative jurisdictional allegations." *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1998). Taken alone, Antares' Complaint contains "clear, distinct, and precise" jurisdictional allegations. *See* ECF No. 71 at 2–18. But the Court's jurisdictional inquiry evaluates "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming*, 281 F.3d at 161. Here, the record contains additional facts that indicate Antares' claim for specific performance is moot.

*First*, the record shows—and the Complaint acknowledges—that Defendants permitted inspection of the relevant books and records. *See* ECF No. 71 at 18. Antares complains that its third-party auditor was hindered in reviewing the books and records because they are maintained in an electronic database and Defendants wouldn't foot the bill to review and copy them in a more convenient format. *See id.* However, the GAA expressly authorizes Defendants to maintain their files electronically and does not call upon them to deviate from this practice if USIC or Antares requests inspection. *See* ECF No. 77-1 at 8; *see also* ECF No. 88 at 6 (noting § 5.08 of the GAA authorizes electronic storage and does not require Defendants to bear the costs of requested inspections). Thus, Antares openly acknowledges that Defendants offered their books and records for inspection, it just disputes the format in which they did. Whether or not that was the case when Antares filed suit, it was true by the time the case was transferred here. *See* ECF No. 79 at 16 ("NTA's books and records remained available for inspection and were, in fact, inspected by Antares during August and September 2023."). This renders Antares' claim for specific performance moot. *See Env't Conservation Org. v. City of Dall.*, 529 F.3d 519, 527 (5th Cir. 2008) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 661, 665 (5th Cir. 2006)) ("As a general rule, 'any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot.'").

*Second*, the record shows Defendants never pushed back when Antares asked to review and copy their books and records. Antares argues "NTA and SRM refused [its] request that it be permitted to send an in-person copy service to obtain copies of the applicable files." ECF No. 71 at 16. As discussed below, the record paints a different picture. However, before getting to the issue of copying, Antares gets over its skis with this argument. The record shows Defendants promptly opened their Pleasanton, California offices to any Antares representatives who wished to review the relevant files. *See* ECF No. 79 at 18; *see also* ECF No. 71 at 18. That fact is undisputed. *See id.* While Antares contends it is unreasonable to require review of the books and records in California, the relevant contracts *require* Defendants to maintain their records there. *See* ECF No. 77-1 at 8 (noting "these records shall be kept in the State of California"). Thus, Antares' dispute is not really about Defendants' refusing access to books and records—its about *how* they permitted inspection.

*Third*, the record shows Defendants communicated willingness to cooperate with Antares' inspectors but declined Antares' additional (non-contractual) demands. As NTA notes, Antares' position is based on "Antares' about-face during May 2023" when it reversed its position vis-à-vis an in-person audit and began demanding a virtual inspection. ECF No. 79 at 16. But the controlling contractual provisions only require Defendants to keep books and records "open to examination" (ECF No. 77-2 at 6) and to make them "available to [Antares]" (ECF No. 77-1 at 8). Neither the GAA nor the Quota Share Agreement require a specific format or protocol and neither requires Defendants to bear the costs of inspection. *See id.* The Complaint notes that Antares' third-party auditor reviewed Defendants' books and records in California on two different occasions in 2023. *See* ECF No. 71 at 18. Thus, Defendants complied with their contractual obligations, just not in the way Antares preferred. Accordingly, what Antares couches as an outright refusal to permit inspection is rather a refusal to let Antares superimpose extracontractual conditions. Because Defendants met all *contractual* obligations Antares could demand, Antares' claim is moot. *See Coliseum Square Ass'n*, 465 F.3d at 246.

In many respects, this case serves as a lesson in Murphy's Law for unwitting contractees. The GAA and Quota Share Agreement left many details unspecified vis-à-vis *how* Defendants must permit inspection. Antares cannot bring a breach claim for Defendants' failure to comply with terms not in the contract—and the Court will not order specific performance of obligations not imposed by the legal instrument itself. When negotiating and drafting contracts, contractees should fully utilize their imaginative faculties to consider situations like this, where one party may want to act upon a particular contractual right but will need provisions enumerating who does what and which party foots the bill. The record shows Defendants agreed to cooperate with Antares in obtaining copies of the relevant books and records, just not on Defendants' dime. *See, e.g.*, ECF No. 77-4 at 5 (informing Antares that NTA does not refuse "a request made by Antares to audit claim files subject to its inspection rights under the [Quota Share Agreement] or GAA"). Indeed, considering Defendants' express agreement to permit copying, the only hurdle was Antares. *See id.* at 9 (letter from Yogesh Kumar to Antares saying "NTA will reasonably cooperate with Antares to the extent it seeks to secure copies of any relevant information it may identify during its audit; however, NTA keeps the claim files electronically . . . and thus needs a better understanding of how the professional copying services intends to make copies . . . before it can commit to a timeline on them being available for copying").

If Antares wanted Defendants to permit inspection on their dime and on its terms, it should have said so in the contract. But it cannot do so now. This is why the voluntary cessation rule does not give Antares an out. To defeat the rule, Defendants must show "that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env'tl Servs., Inc.*, 528 U.S. 167, 189 (2000). Because Defendants openly agreed to allow inspection, and because Antares' auditor has already inspected the books and records but was dissatisfied only by their format, there was never any "wrongful behavior" in the first place. Thus, because Defendants complied with their obligations under the controlling contractual provisions, Antares' claim for specific performance is moot. *See Coliseum*

8

*Square Ass'n*, 465 F.3d at 246. Accordingly, the Court must **GRANT** Defendants' Rule 12(b)(1) Motions for Antares' first cause of action. The Court now turns to their arguments under Rule 12(b)(6).

### B. Antares fraud and fraudulent-misrepresentation claims are barred by the economic loss rule.

Defendants argue Antares' fourth and fifth causes of action fail the heightened pleading standards enumerated in Federal Rule of Civil Procedure 9. *See* ECF Nos. 77 at 13–14; 79 at 11. While Rule 8 normally requires a "short and plain statement" of a plaintiff's contentions, Rule 9 ups the ante for claims sounding in fraud. *See* FED. R. CIV. P. 9; *see also United States ex rel. Colquitt v. Abbott Laby's*, 858 F.3d 265, 371 (5th Cir. 2017) (noting the pleadings must convey, at minimum, "the who, what, when, where and how of the alleged fraud"). And plaintiffs cannot allege fraud on the front end and seek evidence to substantiate their claims through subsequent discovery. *See ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 226, 349 (5th Cir. 2002) (citations omitted) (noting Rule 9(b) requires specific allegations of fraud "before access to the discovery process is granted"). Defendants say Antares' Complaint fails this standard; Antares disagrees. As explained below, the Court generally agrees with Antares that its allegations meet Rule 9's particularity standard. However, the Court must still grant Defendants' Motions because the resulting injury is not distinct from damages recoverable for breach of the underlying contract.

It is hornbook law in Texas that "the mere failure to perform a contract is not evidence of fraud." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Thus, it doesn't matter what kind of chicanery happened behind the scenes to breach a contract, such malfeasance doesn't give rise to a fraud claim unless it resulted in damages beyond those recoverable for the contractual breach itself. *See id.*; *see also Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). This so-called "economic loss rule" is designed to prevent plaintiffs from doubly recovering for a contractual breach by repackaging their contract claim in tort verbiage. *See id.* To avoid preclusion under the economic-loss rule, Antares must show "the duty [Defendants] allegedly breached is independent of the contractual

9

undertaking and the harm [Antares] suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014). It fails to do so.

By all accounts, the Complaint details a scheme that smells a lot like fraud. *See, e.g.*, ECF No. 71 at 18–22. Antares' fourth claim alleges that SRM purposefully under-reserved claims to increase NTA's commissions. *See* ECF Nos. 71 at 25; 86 at 17. Antares' fifth claim alleges that Defendants set up a fake file for an entity called "John Smith Trucking" so they could cover their tracks and keep their inflated commissions. *See* ECF No. 71 at 26. Some may query the brilliance of fraudsters who pick such a hackneyed name for a fictitious file to ensure their broader scheme is not uncovered. Still, Antares' factual allegations suggest SRM and NTA were in cahoots to do just that. *See id.* Viewing the pleadings favorably to Antares and construing all well-pleaded facts in its favor, the Court sees intuitive merit in its fourth and fifth causes of action. *See Pilgrim's Pride Corp.*, 632 F.3d at 154–55.

But both of Antares' fraud-related claims resulted in harms indistinguishable from breach of the underlying contract. *See* ECF No. 71 at 25–27. The facts in the Complaint are a bad look for Defendants, but bad looks cannot support a fraud claim where the resulting harm was merely contractual. *See Chapman Custom Homes*, 445 S.W.3d at 718. Because Antares' fourth and fifth claims would be redressable in contract, it may not manufacture a tort claim to bolster its recovery. *See Formosa Plastics*, 960 S.W.2d at 48. Otherwise, every breach of a contractual covenant would also support a fraud claim, resulting in double-counting uncountenanced by Texas law. *See id.* Accordingly, the Court must **GRANT** Defendants' Rule 12(b)(6) Motions against these dual causes of action. The Court now turns to Antares' request for declaratory relief.

### C. Antares' request for declaratory judgment is duplicative of its breach-of-contract claims.

Antares seeks three judicial declarations with respect to its rights under the contractual relationship with USIC and Defendants. *See* ECF No. 71 at 27–28. Without assessing the proposed declarations

themselves, the Court must decline Antares' invitation to devote scarce judicial resources to an unnecessary and duplicative cause of action.

Federal courts have broad discretion in determining whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). And "[i]f a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted." *Cypress/Spanish Ft. I, LP v. Pro. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 710 (N.D. Tex. 2011) (Boyle, J.). Declaratory judgments of a party's contractual rights add nothing where, as here, the rights are implicated in contemporaneous breach claims before the Court. *See id.* (collecting cases). To prevail on its breach claims, Antares must necessarily establish its rights under the contested contractual provisions. Because Antares seeks a declaratory judgment vis-à-vis rights implicated in its (moot) count one or (live) count two, the Court **GRANTS** Defendant's Rule 12(b)(6) Motions against this claim.

## CONCLUSION

For the above reasons, the Court concludes Defendants' Motions (ECF Nos. 77, 78) should be **GRANTED**. However, as Antares rightly notes, Defendants "do[] not raise any arguments with respect to the second cause of action for Breach of Contract-Reimbursement or the third cause of action for Demand for Accounting." ECF No. 85 at 6. Accordingly, while the claims discussed herein should be and hereby are **DISMISSED**, Antares' second and third claims live to fight another day.

**SO ORDERED** on this **20th day** of **March 2024.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE